Good afternoon, Your Honor. My name is Palmer Hoovestall. I'm an attorney from Helena, Montana. I'm appearing on behalf of the appellant Brian Weber. I'm going to use about six or seven minutes, and then I'll reserve the rest for rebuttal. I'm going to argue today the sufficiency of the evidence argument as to Count 1. This is the stolen safe case, and the case begins and ends in at least our analysis with the Ninth Circuit case of the United States v. Lennox. And the United States v. Lennox held that mere sales of drugs from one individual to another individual is insufficient evidence to establish proof of a conspiracy. Who are the individuals we're speaking of here now? Pardon me? I say who are the individuals that we're speaking of here? I heard you said mere sale from one to another. Who are you referring to? In this case, we're not talking about mere sales. We're talking about the search for a safe. Then why'd you talk about the mere sale case? There is a sale. There are sales in this case. There are sales in this case, yes. But the analysis, the conspiracy analysis of the Lennox case applies here, because we're not talking about sales from one person to another in this case. We're talking about... What do you mean? That was never the government's theory of the case, that the sales could support the conspiracy? That's correct. In this case... It only centered on the stolen safe? The safe, yes. It was allegedly stolen. As the Court knows, it was not stolen. It was seized by law enforcement. And so the search that was engaged in by Mr. Weber and all the rest of the individuals that were involved in this alleged conspiracy was a wild goose chase because there was no stolen safe. I think that the Lennox case is important because here we have an agreement solely, if there was an agreement as to Mr. Weber, solely to search for this stolen safe, which never was stolen, and then to return it to Mr. Hoskin. There was no further agreement to distribute any methamphetamine that may have been contained in the safe. That is a lacking element in this conspiracy. Therefore, the government's evidence was insufficient. I don't think that the government could get around that evidence. There simply was no evidence of an agreement to further distribute the methamphetamine that was in there. And that's the beginning and the end of this analysis as of Count 1. Now, there is some other evidence, I expect, that both the counsels come up and say, well, there's other evidence that Mr. Weber knew that there was methamphetamine in the safe. Johnny Holmes testified that prior to this incident, about three weeks, two to three weeks prior to this incident, Mr. Weber goes to Mr. Holmes and say, let's break into this storage shed, let's steal the safe, and let's basically use the methamphetamine in it ourselves. Similarly, Mr. Holmes testified that after this confrontation with Mr. Weber, and the clerk can recall what happened during the confrontation, he's asleep in his hotel room, all these people come in with bats and guns and sticks and so forth, and they threaten to do him harm, and they basically take his property and make him go with them until he returns it, or until he tells them where the safe is and returns it. And, of course, he goes out with them because he's forced to, and they never locate the safe because it was not stolen and he didn't have it in his custody. Then after that, at least the district court found that, in essence, one day after that, Mr. Weber goes back to Mr. Holmes and says, let's steal this safe, let's give you up the proceeds, you can take the money or whatever that's in there, and I'll take the methamphetamine. If that evidence is believed, which apparently the jury did, it still does not establish proof of the conspiracy charge. What's missing? What element is missing? That's to try to establish a conspiracy. There's an agreement, right? Not with Shane Hoskins, not with the people that were... Holmes, the agreement with Holmes. Yeah, but it's a separate conspiracy than the agreement with Shane Hoskins. It's a separate conspiracy than what was charged. In essence, what he's saying, Mr. Holmes, you and I will take this safe, and we'll use it, we'll give you up the proceeds, I'll take the drugs, you take the money. Did Holmes agree to that? Pardon me? Did Holmes agree to that proposition by Mr. Weber? He did not agree to that, no. But if it can be construed to be conspiratorial conduct, which we assert that it's not, it's not in furtherance of the conspiracy that was charged. And the conspiracy charged was? To possess with the intent to distribute methamphetamine, the agreement was to take Shane Hoskins' methamphetamine and sell it. When you say take his methamphetamine, you mean the methamphetamine in the safe? That was in the safe, and further distribute it. And that is simply, that is the agreement between Mr. Hoskins, Darmer, McCryhugh, the other individuals, the other conspirators in the case. Is that the way the case was argued to the jury? The Lennock case? I don't think that the Lennock case was argued to the jury in that manner. I mean, the case was not argued in that manner to the jury. It was argued under the Rule 29 motion. I think that the defense at the jury trial level was simply that you cannot believe Mr. Hoskins. I see I have about four minutes left, so I'll reserve the rest. Okay. Good afternoon. May it please the Court. I am Josh Van de Wetering, Assistant U.S. Attorney from the District of Montana out of our Missoula office. This is a case about the facts of the case. I don't think we're really disputing anything about the law here. The facts are there was an agreement that Mr. Weber entered into with Shane Hoskins and the rest of the crew to find a safe that everyone knew, or certainly Mr. Weber knew, had methamphetamine in it. The government established that Mr. Weber was a drug dealer. He had received dealer quantities of methamphetamine from Tina Gibson on a regular basis. He had approached Johnny Holmes prior to being accused of stealing the safe with a desire to acquire the safe. It doesn't take a big leap, or it's an easy inference for the jury to make, to say that Brian Weber, a drug dealer, is seeking to acquire methamphetamine. What was the evidence that there was an agreement that the jury could have believed? The evidence was, Your Honor, Johnny Holmes went into that hotel room with everybody else. Shane Hoskins went in, accused Brian Weber of stealing the safe, but ultimately came to believe that Weber did not have it. And at that point, Weber throws in with Hoskins to find the safe. So the agreement is Holmes' testimony that there was, in fact, an agreement. And then the events of the rest of the night, and I think into the next day, where Weber goes around and assists Hoskins in trying to find the safe. That's the agreement to possess with intent to distribute methamphetamine. Holmes testified he had an agreement with Weber? Holmes testified that Hoskins had an agreement with Weber. When Hoskins' effort to intimidate Weber fails, and he comes to believe that Weber, in fact, does not have the safe, which was true, Weber then throws in with Hoskins to try and find it. And the evidence of that comes from Holmes, as well as several other witnesses who testify that Weber comes out of the hotel room voluntarily. He stops at a friend's house at one point and gets a gun. He goes with Holmes and Mick Jacobson and others to several other homes to roust other people looking for this safe. The evidence is clear that Weber knows there's methamphetamine. It's clear that he intends to help Hoskins find the methamphetamine. And it's a very reasonable inference to believe that when the methamphetamine is found, given the quantity, they all understand it is, and there was, in fact, a safe with that amount of methamphetamine. Well, there was lots of evidence also that Weber wanted to steal the safe for himself, right? And he may well have. There is no concrete evidence of what Weber intended to do once the safe was found with Hoskins. And based on his prior desire to steal it, he may well have decided that he wanted to steal it again. Or he may well have just kept in working with Hoskins. We don't know the answer to that question. And I suspect that Weber was waiting to see what opportunity presented itself. If he didn't have a chance to steal it, he probably would have thrown in with Hoskins. But the fact is that when he walks out of the hotel room, he's in a conspiracy. He's made that agreement. He's actively trying to help find that safe. And, of course, it's a dealer amount of methamphetamine. Does your argument in support of your contention that there's enough evidence for the jury to have found a conspiracy depend solely upon the agreement to search for the safe? Yes, Your Honor. Later on, when Brian Weber approaches Johnny Holmes, it's true that Holmes does not agree to enter into what would be a separate conspiracy to acquire the safe. Weber clearly had previously also approached Holmes to try and steal the safe, and that arguably could have been a conspiracy at that point. But Holmes refused to do that also. Weber wanted the safe, and when he met up with Hoskins, that's when he had an agreement. So you stand or fall entirely on the search for the safe? Yes. Let me make sure of that one. I'm sorry. No, go ahead. There's some evidence that prior to this search for the safe episode, that Weber was being fronted methamphetamine by Big Tina, and that he would then take the methamphetamine, sell some of it to finance his own purchases, and go back to Big Tina. I understand you then to say that you're not relying on that. No, I'm going to retract that, actually. In fact, as I recall my argument at the trial, I did argue that the whole picture, Brian Weber's part of the whole picture. Early on, and methamphetamine's going Hoskins to Big Tina to Weber, among others, and he's part of the conspiracy at that point also, being a lower member. But you did not make this argument in your brief to us. Not in the brief to you, no. I made it to you. Why not? I'm sorry? Why not? You know, I guess I just didn't think of it at the time, because Weber's bigger involvement, I think, or when he gets involved with trying to find the larger quantity of methamphetamine that he's ultimately found responsible for, and that he clearly knows about, is when he agrees with Hoskins to try and find that safe. So, you know, what Weber wants to do with it in the end is anybody's guess. But he's, yes, he's part of this group, and has worked at least through Tina Gibson with this group before, and stands to, at the very worst, be allotted some of this methamphetamine to sell, and perhaps at the best, to steal it. When you say you argued this other theory that Judge Fletcher just referred to, you argue it to the jury or to the court on the Rule 29 or whatever? I argued it to the jury in closing argument at trial, Your Honor. I don't believe I argued it in Rule 29. In my argument on Rule 29 and in my briefs before this Court, I've stuck to the safe argument. By the way, was the jury instructed on multiple conspiracies? I don't recall. My hunch is they were. We had multiple defendants, and of course it's our policy or our practice to instruct on multiple defendants. So you think it was. That's your recollection, at least. You know, that's the best of my recollection, but I wouldn't want you to hold me to it, because I honestly don't recall firmly. So I guess, Judge Fletcher, to answer your question, I've gone both ways over the course of the whole of this case, and I think the facts support Weber's further involvement in that. I think also, though, that the search for the safe standing alone supports the conviction that the jury brought back here, conviction for conspiracy, because I think all those elements are covered. There was an agreement. The agreement was to acquire methamphetamine. The amount of methamphetamine allows an inference that the methamphetamine was to be distributed. And, of course, Weber's prior distribution or his prior efforts as a drug dealer are a big part of that inference also. Why should we not hold that your failure to raise the argument here with respect to sales and fronting by Gibson to Weber is not a waiver of that argument here? Well, I would say that you shouldn't hold that because it's a turn on the facts as opposed to a different argument, and it's one that I have brought up in the case previously. But the thing I would really offer is that there is sufficient evidence to find, even on just the argument about the safe, that there is a conspiracy in existence, especially given the burden of proof and viewing the facts and the like most favorable to the government and accepting reasonable inferences. With respect to the other arguments, I think the United States' position is strong on a factual basis also. There's no discovery issue with respect to any informant who's directly related to the case or even very indirectly related to the case that wasn't revealed. And with respect to the first issue, excuse me. Let me just follow up on this Judge Fletcher's line of questioning. If we were to view the evidence as supporting a conspiracy with Gina Gibson because of the sales and agreements to sell and fronting and stuff like that, as opposed to the conspiracy to find the safe, then the amount of the drugs involved is quite a bit smaller, isn't it? Well, Your Honor. As far as the evidence establishes. I would disagree with that because the evidence is very clear. Certainly, if this Court believes, as it must believe, Johnny Holmes, the evidence is very clear that Brian Weber, not only was it reasonably foreseeable to him how much methamphetamine was in the safe, he flat knew how much methamphetamine was in the safe. He told Holmes that he thought it was five to six pounds. No, but he's talking about the drugs in the safe. Suppose the only conspiracy we find is this conspiracy with Gibson. I would agree with you there, Your Honor. If the only conspiracy you find is Weber in a conspiracy exclusively with Gibson and therefore he has no conspiratorial relationship with any of the others, including Hoskins, then there is a big sentencing issue. But I'm certainly not offering that argument. I'm offering just the safe or the full picture. I certainly wouldn't take the safe out of my argument. I appreciate that. Thank you. Thank you. Can I just, before I forget, can I ask you to respond to Judge Fletcher's line of questioning about evidence in the record about this conspiracy with Tina Gibson? Yes, and that's one of the reasons why I think that the Lennock case is the beginning and the end of this case. If you read the transcript of Tina Gibson's testimony, she essentially says that Brian Weber was one of my customers. I sold it to him in ounce, eight ball quantities, quarter-ounce quantities, and that's it. What, the government fails? That's it. Now, did she also say, I fronted him the meth? She does say that I fronted him as well. But I think that what is significant and what the government's proof fails to do is to link the testimony of the safe methamphetamine with Tina Gibson. I think that there is no connection there, if we look at the evidence. But if the government proved a conspiracy between Tina Gibson and Mr. Weber to distribute methamphetamine, with Mr. Weber being, at some points, being in possession with intent to distribute, is that, assuming that's been proved, is that conspiracy within the scope of the conspiracy charged in the indictment? No, it's not, Your Honor. And the reason is because the proof that we have at trial here, and the reason I would assert that the government failed to argue this previously in the briefs, is because we're talking solely about the methamphetamine and the safe. We're not talking about this other stuff. I think maybe I didn't make my question clear. I'm saying if it is proved, or if there's enough evidence to allow the jury to conclude that there was a conspiracy between Gibson and Weber with respect to the amounts fronted to Weber, is that behavior charged in the indictment? I'm asking about the scope of the indictment rather than about factual proof. I think that the scope of the conspiracy ran from January to June. And the testimony that Tina Gibson elicited at trial, I think, did not have a date to it. In other words, we don't know whether it was prior to January or during the January to June conspiracy or not. She simply could not remember. And she was pressed, incidentally, on cross-examination to provide us with specific dates and specific amounts and so forth, and she could simply not do that. So I would say no. With respect to the multiple conspiracy, my recollection is that it was given, that is the jury instruction was given. We used the, in Montana at least, we used the Ninth Circuit jury instruction, and I think that that contains the multiple conspiracy instruction in there. The bottom line, members of the Court, is that we're talking about, and the proof at trial was about the methamphetamine in the safe, and there was absolutely no evidence of any intent or any agreement or any meeting of the minds between Mr. Weber and Mr. Hoskins to further distribute that methamphetamine. The only thing that was agreed to do was to search for the safe and to return it to Shane Hoskins. That's it. Thank you. Thank you. Thank you very much. We thank both of you for making the long trip from Montana. The case of United States v. Weber is now submitted for decision.
judges: Noonan, Tashima, W. Fletcher